## RIPP v. FUCHS.

(Supreme Court, Appellate Division, First Department. December 11, 1908.)

1. MASTER AND SERVANT (§ 243*)—INJURY TO EMPLOYÉ—EMPLOYER'S LIABILITY.

 A contractor is not liable for the death of a bricklayer, who fell from a scaffold on the falling of part of a wall which he was helping to lay, where he and his fellow workmen disregarded instructions to complete the wall course by course, and laid several courses on the outside without filling in behind.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 759; Dec. Dig. 243.*]

2. MASTER AND SERVANT (§ 101*)—"WORKS, WAYS, AND MEANS"—WALLS.

 A wall in course of construction is not "works," "ways," nor "means," within the employer's liability act (Laws 1902, p. 1748, c. 600), making an employer liable for injuries caused by defective works, etc.

 [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 101.*]

3. MASTER AND SERVANT (§ 116*)—"PLACE OF WORK"—WALLS.

 A wall in course of construction is not a bricklayer's "place of work," within the rule requiring an employer to provide a safe place of work; the place furnished being the scaffold.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Adam Ripp, as administrator, against Michael Fuchs. From a judgment. for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN; HOUGHTON, and SCOTT, JJ.

James J. Mahoney, for appellant.

Morris Hillquit (Bertram L. Marks, on the brief), for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of George Ripp, alleged to have been caused by the negligence of the defendant. The defendant was engaged as a contractor in erecting a building at No. 38 East Twenty-First street, in the borough of Manhattan, New York, and decedent was in his employ as a bricklayer, and at the time of the accident which resulted in his death was standing on a scaffold on the inner side of the rear wall of the building, laying bricks on a parapet wall at the tenth story. The negligence charged was failure on the part of defendant and his foreman, whose principal duty is alleged to have been superintendence of the work, to supply proper and well-mixed cement, and to brace and support the parapet wall during the course of its construction, and negligence in suffering the parapet wall to be erected in an improper, insecure, and careless manner.

The wall was 12 inches in thickness. It was built upon an iron girder. The wall was corbelled to the height of three layers of brick, each course standing out more beyond the base than the one on which it rested. According to the evidence introduced by plaintiff, which was based entirely on measurements taken after the accident, the first course of brick extended beyond the girder 1¾ inches, the second 1¾ inches further, and the third 2¼ inches further, making 5¾ inches in all. The thickness of the wall was not increased at the point where it was corbelled, or above that point. As it projected outward, the inner line, instead of running up perpendicularly, receded toward the rear, and above the third layer of brick it was carried upwards perpendicularly just 1 foot in width, to and including the eighth course of brick from the girder. Thus, according to plaintiff's case, above the third course of brick only 6¼ inches of the wall was directly over the girder. Above the eighth course, the decedent and his fellow bricklayers, instead of completing the wall course by course, as they had been directed to do by the foreman, and which was the workmanlike manner of doing it, laid up five courses of brick on the outer edge without filling in behind. At this point in the progress of the work about 17 feet of the wall toppled over, and the decedent and two other bricklayers, who were standing on the scaffold, fell to the ground and were killed. No part of the scaffold on which the decedent and seven or eight other men were working at the time gave way, and it was neither charged nor claimed that the scaffold was improperly constructed.

The evidence introduced on behalf of the defendant tends to show that each of the three layers of brick was extended only 1½ inches,

making 4½ in all, and that the piers to which the wall was tied at either end were only 16½ inches thick, and the inner lines were flush with the rest of the wall—apparently strong corroborating evidence that the extension was 4½, instead of 5¾, inches. The plaintiff's theory of the case, as developed on the trial, was that the wall was improperly constructed, in that the inner line should have been carried up perpendicularly, thus increasing its thickness at and above the point where it was corbelled; and evidence was given tending to show that this was the customary method of constructing a corbelled parapet wall of this thickness. If the wall had been thus constructed, carrying the inner line up vertically, it would have had a direct support of 12 inches on the girder, and the center of gravity would have been well on the girder, instead of near its outer edge. On this evidence plaintiff claimed that the accident would not have happened, had the wall been so constructed. The plaintiff also claimed upon the trial, and contends here, that the plan on which the wall was to be constructed was unsafe, and that the wall would have fallen and caused the accident, even though the bricklayers had carried out the instructions of the foreman and completed it, front and rear, course by course. These questions were left to the jury, and no exception was taken thereto.

The court instructed the jury that if defendant's foreman did not. give instructions, as claimed, or if given, the men followed them, and the accident was caused by an unsafe design or plan of construction, the defendant would be liable. No exception was taken to any of these rulings. The wall which fell was joined and tied to a pier at either end which had been previously constructed, and this bound and held it to a certain extent. If it were certain that the wall would have fallen, even though the direction of the foreman had been observed, then the defendant might properly be held; but it was not certain, and undisputed evidence, as well as evidence introduced by. defendant, tended to show that it would not have fallen if constructed as the foreman directed. Without the support afforded by joining the wall to the piers, the center of gravity was over the girder, giving a support of 43 pounds to the foot on the girder over the weight outside, and the wall would have stood in the absence of any considerable additional weight being placed upon it or pressure exerted against it. There is evidence that one of the bricklayers, in laying a brick just before the wall fell, rested his knee upon the wall; but it does not appear that this was at all necessary to enable him to do his work. The wall was then about 2½ feet high, and, as the scaffold on which the men were standing was a few inches higher than the lowest layer of brick, it is evident that it was necessary for the bricklayers to stoop to lay the wall. It appears, however, that they were all experienced men, and should have known, without special instructions at the time, that there was danger in building up the outer parts of the wall by itself. There is also evidence, which is uncontradicted, that this was done by consent of all the men after the foreman left that part of the wall temporarily.

If it is to be inferred from the verdict that the jury found that the foreman did not instruct the men to complete each course as they went

along, then it is clearly against the weight of the evidence, and should be set aside. If such directions were given by the foreman, it is clear that they were disobeyed, and the defendant should not be held liable, as he may have been, on the theory that the plan was dangerous. The instructions of the foreman were followed until he was temporarily called below, and then the men of their own motion and by common consent proceeded in disregard of his instructions. In such circumstances no rule of law holds a master liable. The immediate cause surely was the failure of the men to follow the directions of the foreman, and it will not do to speculate, and say that, if the wall had all been built up together, it would not have stood. The question is not whether the wall would have stood, but whether the accident would have happened.

The charge of the court brought the case within the employer's liability act, so called (c. 600, p. 1748, Laws 1902), by instructing the jury that it was for the defendant to furnish his employés proper and sufficient works, ways, and means. The court declined a request, duly made by counsel for defendant, that the jury be instructed that there was no evidence to warrant a finding that defendant failed to perform this duty, and exception to such refusal was duly taken. We are of opinion that this was error. No such charge of negligence is found in the complaint, and the facts do not bring the case within that statute. A wall in process of construction is neither "works," "ways," nor "means," within the contemplation of the employer's liability act.

The court also instructed the jury that it was the duty of the defendant to furnish decedent a reasonably safe place in which to perform his duties, and submitted it to the jury to say whether he had performed that duty. An exception to this was likewise taken. Neglect of this duty was not charged. The place furnished was the scaffold. The rule is not applicable to the wall, which was being constantly changed by the decedent and his fellow employés.

We also have grave doubts as to whether the plaintiff sustained the burden of showing that decedent was free from contributory negligence. It does not appear but that he likewise was unnecessarily on or leaning against the wall, or that the falling of the wall caused him to fall.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.